IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL ACTION

AUTUMN LAKE RECREATION
ASSOCIATION, INC., a Florida
not-for-profit corporation,

       Plaintiff,

vs.                                 Case No. _____

KATERRA CONSTRUCTION, LLC,
a Delaware limited liability company

       Defendant.

_____/

## COMPLAINT FOR ORDER TO SHOW CAUSE

COMES NOW the Plaintiff AUTUMN LAKE RECREATION ASSOCIATION, INC., a Florida not-for-profit corporation, through its undersigned attorney, and sues the Defendant, KATERRA CONSTRUCTION, LLC, a Delaware limited liability company authorized to do business in the State of Florida, and alleges:

    1.      This is an action pursuant to Section 713.21(4), Florida Statutes, for the issuance of a summons requiring the Defendant, KATERRA CONSTRUCTION, LLC, to show cause why a Claim of Lien should not be enforced by action or vacated and canceled of record.

    2.      Plaintiff AUTUMN LAKE RECREATION ASSOCIATION, INC. (hereinafter "ASSOCIATION"), is a Florida not-for-profit corporation, charged with the operation and maintenance of Autumn Lake Section I, a Condominium; Autumn Lake Section II, a Condominium; and Autumn Lake Section III, a Condominium (hereinafter collectively "Condominium"); conducting business at all times material hereto in Lee County, Florida; and, pursuant to Section 713.23, Florida Statutes, the owner of the Condominium located in Lee County, Florida, more particularly described as follows:

The Common Elements of Autumn Lake Section I, according to the Declaration of Condominium for Autumn Lake Section I, a Condominium, recorded on September 15, 1998, in O. R. Book 3012, Page 1704, and as may be amended, of the Public Records of Lee County, Florida.

The Common Elements of Autumn Lake Section II, according to the Declaration of Condominium for Autumn Lake Section II, a Condominium, recorded on June 24, 1999, in O. R. Book 3135, Page 3868, and as may be amended, of the Public Records of Lee County, Florida.

The Common Elements of Autumn Lake Section III, according to the Declaration of Condominium for Autumn Lake Section III, a Condominium, recorded on November 30, 1999, in O. R. Book 3192, Page 3960, and as may be amended, of the Public Records of Lee County, Florida.

All common areas, including Parcel "B", according to the plat of Spring Run at The Brooks, Phase One, recorded in Plat Book 61 at Pages 60 through 66, Public Records of Lee County, Florida.

3.      Defendant KATERRA CONSTRUCTION, LLC (hereinafter "KATERRA") is a Delaware limited liability company authorized to do business in the State of Florida, having its principal place of business in Menlo Park, San Mateo County, California.

4.      Venue and jurisdiction are properly laid in Lee County, Florida, Circuit Court, pursuant to Chapter 47 and Section 26.012(2)(g) of the Florida Statutes, because the real property that is the subject of this litigation is located in Lee County, Florida.

5.      The ASSOCIATION is the proper party on behalf of all of the Plaintiff ASSOCIATION members concerning matters of common interests to the members of the ASSOCIATION for the Condominium that is the subject of this action relating to improvements to the common elements.

6.      The ASSOCIATION is the representative of the class of unit owners of the Condominium that is the subject of this action, pursuant to Rule 1.221, Florida Rules of Civil Procedure.

7.      On or about July 3, 2019, the ASSOCIATION entered into a construction contract with KATERRA for tile roof replacement on 12 Condominium buildings and the common area pool house and mail kiosk. A copy of the contract is attached as **Exhibit "A".**

8.      On or about July 3, 2019, KATERRA commenced the work, and all 12 Condominium buildings and the common area pool house and mail kiosk received final inspection for completion in October of 2019, the last inspection being on October 21, 2019.

9.      On or about January 1, 2020, January 23, 2020, and January 24, 2020 final lien releases were issued by all subcontractors and suppliers.

10.     After October 2019, KATERRA only returned to the project to correct deficiencies in its previously performed work and materials supplied.

11.     On or about March 3, 2021, KATERRA recorded a Claim of Lien at Instrument Number 2021000066356 of the Public Records of Lee County, Florida, for labor, services, or materials consisting of "ROOF REPAIR" and provided the last of the items on December 2, 2020. A copy of the Claim of Lien is attached as **Exhibit "B".**

12.     Pursuant to Section 713.08, Florida Statutes, the Claim of Lien may be recorded at any time during the progress of the work or thereafter, but not later than ninety (90) days after the final furnishing of the labor or services or materials by the lienor.

13.     Pursuant to Section 713.01(12), Florida Statutes, the last date of "final furnishing" does not include correction of deficiencies in the lienor's previously performed work or materials supplied. Since all work performed by KATERRA since October 2019 was repair to its own deficiencies with the roofs it installed, the actual date of final furnishing by KATERRA occurred on or before October of 2019, over a year prior to the erroneous date of December 2, 2020 included in the Claim of Lien.

14.     Notwithstanding the erroneous final furnishing date of December 2, 2020, the Claim of Lien is invalid on its face because it was recorded on March 3, 2021, more than ninety (90) days after the final furnishing of labor or services or materials.

15.     Accordingly, KATERRA failed to perfect an enforceable construction lien since it failed to timely record its Claim of Lien, as required by Section 713.08, Florida Statutes.

16.     The ASSOCIATION has been required to retain an attorney and has obligated itself to pay its attorney a reasonable fee for which KATERRA is liable under applicable Florida law.

17.     All conditions precedent to filing and maintaining this cause of action have occurred or been waived.

WHEREFORE, the Plaintiff ASSOCIATION prays that:

A.     Upon the filing of this Complaint, the Clerk of the above-styled Court will issue a summons to Defendant KATERRA to show cause, within twenty (20) days, why its Claim of Lien should not be enforced by action or vacated and canceled of record, pursuant to Section 713.21(4), Florida Statutes; and

B.     If Defendant KATERRA fails to show cause, this Honorable Court will enter its Order vacating and canceling the Claim of Lien of record and award Plaintiff ASSOCIATION its costs and attorney fees in this action.

DATED this __16th__ day of March, 2021.

PAVESE LAW FIRM
Attorneys for Plaintiff
Post Office Box 1507
Fort Myers, Florida 33902-1507
(239) 334-2195 Telephone
(239) 332-2243 Facsimile
Email 1: JustinMazzara@PaveseLaw.com
Email 1: ChrisPope@PaveseLaw.com
Email 2: SusanNahra@PaveseLaw.com
Email 2: LisaMeo@PaveseLaw.com


By: _____
    [X] JUSTIN B. MAZZARA, ESQ.
      Florida Bar No. 36217
    [ ] CHRISTOPHER L. POPE, ESQ.
      Florida Bar No. 91955

# CONSTRUCTION CONTRACT
### Project: Roof Replacement/Hurricane Irma Restoration
### 12 Buildings, Pool House, Mail Kiosk

**THIS CONSTRUCTION CONTRACT** (hereinafter "Contract"), is made and entered into this _____ day of _____, 2019 by **Autumn Lake Recreation Association, Inc.,** a Florida corporation not-for-profit, c/o Sandcastle Community Management, 9150 Galleria Court, Suite 201, Naples, Florida 34109 (hereinafter "Association"), responsible for the operation and maintenance of **Autumn Lake Section I Condominium, Autumn Lake Section II Condominium, and Autumn Lake Section III Condominium; and Katerra Construction, LLC,** a Delaware limited liability company authorized to do business in Florida, **Contractor's License # CGC1526785,** 2494 Sand Hill Road, Building 7, Suite 100, Menlo Park, California 94025 (hereinafter "Contractor").

1.  **DESCRIPTION OF WORK:**

    The Contractor shall perform all work required by this Contract, according to the plans, drawings, and bid specifications ("Drawings & Specifications"), as set out in the SRG Roofing Tile Re-Roof Proposal and the Katerra List of Non-Roof Repairs to Interior of Units, attached hereto and incorporated as **Composite Exhibit "1".** The documents attached as Exhibit "1" are intended to supplement the terms of this typed Contract. In the case of any conflicting term or condition between the terms set out in Exhibit "1" and those set out in the text of this typed Contract, the terms of this typed Contract shall prevail.

2.  **TIMELY COMPLETION:**

    The work to be performed under this Contract shall commence on _____ and, subject to authorized adjustments, shall be completed no later than _____ ("Completion Date").

    Time is of the essence of this Contract and any breach of same shall go to the essence hereof, and Contractor, in agreeing to complete the work within the time herein mentioned, has taken into consideration and made allowances for all hindrances and delays incident to its work. Association shall not be liable to Contractor for any delays caused by any of Contractor's sub-contractors, or for any other cause whatsoever.

    Contractor agrees to commence the work when directed by Association and to diligently and continuously perform such work and to coordinate the work with other work being performed on the project by other trades, so that Association shall not be delayed by any act or omission of Contractor in completion of the project within the time specified above.

    Contractor acknowledges that working hours are from 8:00 AM to 5:00 PM, Monday through Friday, excluding federal holidays. Exceptions to working hours must be pre-approved by the Association.

    Contractor shall make payments promptly to its vendors and contractors, and for material used by it in the performance of the work.

Page 1 of 12

EXHIBIT
"A"

Contractor shall diligently prosecute the work in a good and workmanlike manner and achieve completion of the entire work on or before the Completion Date. Contractor hereby accepts and confirms that the time allowed herein is reasonable and sufficient for completing the work within such time requirements and hereby agrees to dedicate such personnel and other resources as may be necessary to assure that the work is continuously managed and performed in a diligent, skilled, and workmanlike manner.

IT IS AGREED BY THE CONTRACTOR AND ASSOCIATION THAT, BECAUSE IT WOULD BE IMPRACTICABLE AND EXTREMELY DIFFICULT TO FIX THE ACTUAL DAMAGES TO THE ASSOCIATION IF THE WORK WOULD FAIL TO BE COMPLETED BY THE COMPLETION DATE, THE FOLLOWING AMOUNTS SHALL BE ASSESSED AS LIQUIDATED DAMAGES, BUT NOT AS A PENALTY, FOR DELAY IN ACHIEVING COMPLETION FROM THE COMPLETION DATE THROUGH THE DATE OF ACTUAL COMPLETION:

> THE SUM OF THREE HUNDRED FIFTY AND 00/100 DOLLARS ($350.00) FOR EACH CALENDAR DAY AFTER THE COMPLETION DATE UP TO THE DATE THE WORK IS ACTUALLY COMPLETED.

THE AFOREMENTIONED AMOUNTS REPRESENT THE PARTIES' REASONABLE ESTIMATE OF SUCH ACTUAL DAMAGES AND DOES NOT CONSTITUTE A PENALTY. THE PAYMENT OF SUCH AMOUNTS AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY WITHIN THE MEANING OF APPLICABLE LAW, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO THE ASSOCIATION RESULTING FROM THE DELAY IN ACHIEVING COMPLETION, PURSUANT TO APPLICABLE LAW.

3.  **ASSOCIATION'S / OWNER'S REPRESENTATIVE:**

**Michael Bannigan** will act as Association's representative, assume all duties and responsibilities, and have the rights and authority assigned by Association to ensure the completion of the work in accordance with the Contract. Association may change its representative at any time which will be effective upon notice to Contractor.

4.  **CONTRACT PRICE AND PAYMENTS:**

Association shall pay Contractor in current funds for the performance of the work, subject to additions and deductions by written Change Order agreed to by Association, the Contract sum in the amount of **Two Million Nine Hundred Twenty-Nine Thousand Seven Hundred Twenty and 87/100 Dollars ($2,929,720.87).** Payment shall be made according to the following payment schedule:

**SEE SCHEDULE OF VALUES ATTACHED AS EXHIBIT "2"**

Page 2 of 12

**Progress payments for completed work will be disbursed monthly upon the approval by the Association. In making such payments, ten percent (10%) of each payment to the Contractor shall be retained until final completion and acceptance of all work covered by the Contract, unless otherwise provided by any law, regulation or program of state or federal government. Such retainage shall be held to assure faithful performance of the Contract and may also be used as a fund to deduct amounts due to or claimed by the Association, including, but not limited to, payment to the Association of all monies due for deductive change orders, credits, uncorrected defective work, interest, damages, and the like.**

No additional work or extras shall be performed unless the same shall be authorized in writing by the Association.

Upon completion by Contractor of any stage of the work requiring payment under this Contract, all work will be inspected by Association or consultant selected by the Association to supervise the project. Any objections to work performed shall be given in writing to Contractor within ten (10) days of the Contractor's written notice to Association that the work has been completed. If no objections are made within this period, then payment shall be tendered to Contractor, and Contractor shall submit simultaneously a Progress Payment Affidavit, a Partial Release of Lien, a Partial Release of Lien from all Lienors (as defined in Section 713.02(18), Florida Statutes) that have served a Notice to Owner pursuant to Section 713.06, Florida Statutes, or, if completion is final, a Contractor's Final Payment Affidavit, on forms that the Association may provide, indicating that all sub-contractors, laborers, materialmen, and suppliers have been paid for the work completed.

All work under this Contract shall be subject to the approval of the Association, and no payment shall be due under the Contract if Association does not approve of the work completed under the Contract. In the event of a dispute arising between Association and Contractor, under this provision the parties shall agree upon and appoint a third party expert to determine whether or not the work meets the specifications set out in the Contract. If the work meets said specifications, Association shall make the payment due, whereas if the specifications are not met, all work necessary to meet the specifications shall be done by Contractor to the satisfaction of the third party expert before payment is due under the Contract, or Association may exercise such other rights as are provided herein. All costs associated with the retaining of the third party expert shall be divided equally between the Association and the Contractor.

Payments due to Contractor may be withheld by Association on account of defective work not remedied, claims filed, reasonable evidence indicating probability of filing claims, failure of Contractor to make payments properly to sub-contractors or for material or labor, or the reasonable belief of Association that the work to be performed under this Contract that remains unfinished cannot be completed for the balance then unpaid. If any of the foregoing causes are not removed, or if Contractor at any time shall refuse or neglect to supply adequate and competent supervision or sufficient, properly skilled workmen or materials of the proper quality or quantity necessary for the performance of the work hereunder, or fail in any respect to prosecute the work with promptness and diligence, or

fail to perform or to adhere to any agreement on its part herein contained, Association shall have the option, after seven (7) days written notice to Contractor and without prejudice to any other remedy it may have, to pay such claims and provide for such labor or materials and to deduct the cost thereof from any money due or thereafter to become due by Association to Contractor. In addition to the foregoing rights and remedies, Association shall be at liberty to terminate the employment of Contractor under this Contract and to enter upon the premises and take possession of all materials or appliances, of any kind whatsoever, thereon and to employ any other person or persons to finish the work and to provide the materials therefor, and in case of such discontinuance of the employment of Contractor, he shall not be entitled to receive any payment under this Contract which might be due it, except for those sums incurred by Contractor for labor and materials, minus set offs of the Association for defective workmanship or other breaches by Contractor. When said work shall be finished and payment in full therefor shall be made by Association, if the unpaid balance of the amount to be paid under this Contract shall exceed the expenses incurred by Association in finishing Contractor's work, such excess shall be paid by Association to Contractor, but if such expenses shall exceed such unpaid balance Contractor shall pay the difference to Association. Contractor's right to payment under this Contract shall also be subject to those conditions for payment set forth in other provisions of this Contract.

5.   **CONTRACT COSTS:**

The work includes all transportation, storage, equipment, supplies, labor and materials, plans, Drawings & Specifications, necessary for a complete and functional installation, and the work shall comply with all applicable codes and inspection requirements. All work performed by the Contractor or by others to make the Contractor's work comply with applicable building codes, or interpretations thereof, shall be performed at no additional cost to the Association.

The work shall also include all labor, materials, and everything required or claimed by Contractor's materialmen, suppliers, or laborers to complete the work in accordance with the Drawings & Specifications, notwithstanding that such labor, materials or other things may not be designated in the Drawings & Specifications.

Contractor shall give all notices and comply with all local ordinances, requirements of city and county building codes and of federal and state authorities which are applicable to the work, local sanitary laws and rules and regulations and all orders both present and future, and interpretations of such ordinances, requirements, laws, rules, and regulations by governing public authorities, regardless of whether such ordinances, requirements, laws, rules and regulations are set forth in this Contract, or the Drawings & Specifications. Contractor shall furnish any additional materials and labor which may be required to comply with such ordinances, requirements, laws, rules and regulations. Contractor shall secure, in its own name and right, all permits, inspections, fees, licenses and royalties necessary for the execution of the work to be performed at Association's expense.

Contractor will pay all social security and other taxes imposed upon it as an employer in connection with the performance of this Contract, and will furnish evidence, when required by Association, showing that all such payments required to be made have been paid.

Contractor shall pay all applicable health and welfare charges, local, state, and federal taxes, including sales and use taxes, and union fees in connection with its work. All Contract costs paid by Contractor shall be at the expense of Contractor.

6.      **SUPERVISION:**

Contractor shall supervise and direct the work, using its best skill and attention, and it shall be solely responsible for all construction means, methods, techniques, sequences and procedures, and for coordinating all portions of the work under the Contract. Contractor's resident superintendent, foreman, and all supervisors shall speak English fluently and shall be able to communicate with all workers present on site. Contractor shall at all times enforce strict discipline and good order among its employees and shall not employ on the work any unfit person or anyone not skilled in the task assigned to him or her.

Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the work. It shall take all reasonable protections to prevent damage, injury or loss to (1) all employees on the work, occupants and all other persons who may be affected thereby, (2) all the work and all materials and equipment to be incorporated therein, and (3) other property at the site or adjacent thereto. It shall give all notices and comply with all applicable laws, ordinances, rules, regulations and orders of any public authority, including, but not limited to, O.S.H.A., bearing on the safety of persons and property and their protection from damage, injury or loss. Prior to starting any work, Contractor will implement a safety plan detailing how it will protect unit occupants during the Project.

Further, it is the sole responsibility of Contractor to secure, safeguard and protect its material and operation from damage or theft until formally accepted by Association.

Contractor shall promptly remedy all damage or loss to any property caused in whole or in part by Contractor, any sub-contractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable. Contractor shall be responsible to Association for the acts and omissions of its employees, sub-contractors and their agents and employees, and other persons performing any of the work under a contract with the Contractor, including with regard to damages to any persons or property.   The foregoing obligations of the Contractor are in addition to its obligations under Section 11 of this Contract.

7.      **INSURANCE:**

The Contractor agrees to furnish worker's compensation and liability insurance with limits of at least $1,000,000.00 for each occurrence. Contractor's General Liability shall name the Association as an additional insured and include completed operations and product liability coverage and eliminate exclusion with respect to property under care, custody, or

control of Contractor. The limits shall be as follows:

| | | |
|---|---|---|
| a. | General Aggregate: | $2,000,000.00 |
| b. | Products – Completed Operations Aggregate: | $1,000,000.00 |
| c. | Personal and Advertising Injury: | $1,000,000.00 |
| d. | Bodily Injury and Property Damage (each occurrence): | $1,000,000.00 |
| e. | Excess / Umbrella Liability | |
| | 1.    General Aggregate: | $1,000,000.00 |
| | 2.    Each Occurrence: | $1,000,000.00 |

Contractor shall also maintain automobile liability insurance which shall insure it against claims of personal injury, including death, as well as against claims for property damage, which may arise from operations under this Contract, whether such operations are by the Contractor or by any Subcontractor, or by anyone directly or indirectly employed by either of them. The amounts of automobile insurance shall be not less than $1,000,000 combined limit for bodily injury and property damage per occurrence.

In addition, Contractor shall procure Builder's Risk insurance to protect against damage to improvements during construction due to acts of casualty and/or vandalism. The Contractor agrees to supply the Association with evidence of and keep said insurance policies in full force and effect during the entire course of the work to be performed. It is the understanding that if any insurance cancellation notice is received by the Contractor, it will immediately notify Association, and Contractor agrees to replace said policies promptly. Contractor agrees that it shall perform no work under this Contract during such time as said insurance policies are not in full force and effect.

8.    **BOND:**

**(Choose One)**

_____ Contractor shall furnish performance and unconditional payment bonds, each in an amount at least equal to the Contract price as security for the faithful performance and payment of all Contractor's obligations under the Contract. These bonds shall remain in effect until the later of one (1) year after the date when final payment becomes due or until the completion of the any correction period in the Contract.

___X___ Contractor shall not be required to furnish performance and payment bonds.

9.    **CLEAN-UP:**

Contractor shall cause no waste to the condominium property or adjoining property in the performance of this Contract and at all times shall keep the premises free from accumulation of waste materials or rubbish caused by its operations. At the completion of the work, Contractor shall remove all of its waste materials and rubbish from and about the work site, as well as its tools, construction equipment, machinery and surplus materials, and return all affected areas of the property to a broom clean condition.

If, after three (3) days' notice by Association's representative to Contractor's representative at the site of the work, Contractor has not diligently proceeded with the clean-up as outlined in this provision, then Association has the right to proceed with the clean-up work at Contractor's costs and expense.

Free, clear and unobstructed egress and ingress with respect to the community shall be maintained by Contractor.

10.     **WARRANTIES:**

Contractor warrants to Association that all materials and equipment incorporated in the work will be new unless otherwise specified, and that all work will be of good quality, free from faults and defects and in conformance with the Contract documents, including, but not limited to, the specifications and building code requirements. All work not conforming to these standards may be considered defective. Further, Contractor expressly warrants and guarantees all work and materials provided under this Contract to be fit for the purposes intended for a period of ten (10) years from date of final acceptance, and Contractor hereby agrees that during said period of time any flaws or deficiencies in either work or material shall be corrected and/or replaced and restored to first class working order at no cost to Association. In the event of Contractor's refusal to so restore same as aforesaid, Association may do said work and/or secure additional material after three (3) days' notice to Contractor, and Contractor shall reimburse Association for such sum.

Contractor further warrants that it will comply with all application and other requirements of each producer or supplier of materials, and will ensure that any inspections or other requirements of a producer or supplier for a warranty of the materials takes place or, alternatively, will assume responsibility for any such warranty that might otherwise have been provided.

11.     **HOLD HARMLESS:**

To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Association and its members, agents and employees from and against all claims, damages, losses, and expenses, including, but not limited to, attorney fees arising out of or resulting from the performance of the work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the work itself), including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any sub-contractor, anyone directly or indirectly employed by any of them, or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Section 10. In any and all claims against the Association or any of its members, agents or employees by any employee of the Contractor, any sub-contractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, the indemnification obligation under this Section 10 shall be limited to the greater of $1,000,000.00 per

occurrence or the aggregate policy limits of all applicable insurance policies. The parties hereto specifically acknowledge and agree that the above-mentioned limitation is included pursuant to the requirements of Section 725.06(1), Florida Statutes.

12.   **LIENS:**

Contractor will save and keep the improvements referred to in this Contract or the lands upon which they are situated free from all construction liens and all other liens by reason of its work or any materials or other things used by Contractor therein. If Contractor fails to remove such lien(s) by bonding it or otherwise, or if Contractor files a lien against the property referred to in this Contract prior to the time when the amount claimed is payable to Contractor by Association under the terms of this Contract, Association may retain sufficient funds, out of any money due or thereafter to become due by Association to Contractor, to pay the same and to pay all costs incurred by reason thereof, including reasonable attorney fees and the cost of any lien bonds that Association may elect to obtain, and Association may pay said lien or liens and costs out of any funds which are or which may become due to Contractor and which are at any time in the possession of Association. Invoices shall be accompanied with a detailed breakdown of the allocation of the amount required together with copies of lien Releases.

13.   **WAIVER:**

No change or modification of this Contract shall be valid unless in writing and signed by all parties hereto. No waiver of any provisions of this Contract shall be valid unless in writing and signed by the party against whom it is sought to be enforced. Further, the provisions, conditions, terms and covenants herein contained shall bind and the benefits and advantages shall inure to the respective successors, assigns, trustees, receivers and personal representatives of the parties hereto.
No failure of Association to exercise any power or right given hereunder or to insist upon strict compliance by Contractor with any of its obligations hereunder, and no custom or practice of the parties at variance with the terms of this Contract, shall constitute a waiver or variation of Association s rights to demand exact compliance with the terms hereof.

14.   **ALTERATIONS:**

No alterations shall be made in the work as shown or described in the Drawings & Specifications as modified by applicable ordinances, requirements, laws, rules and regulations as set forth herein, except on the written authorization of Association; and, when so made, the value of the work or materials added or omitted, any extension or deduction from the time of completion necessitated thereby shall be computed and determined by Contractor, subject to the written approval and acceptance by Association, and the amount so determined shall be added to (if Contractor has not previously agreed to perform the additional work under the terms of this Contract) or deducted from the Contract price or prices and time of completion. Contractor shall have no claim for the cost of additional work or for an extension of time (including, without limitation, claims for impact damages or to costs due to delay) unless such work and the cost and expenses thereof or time is stated on the face of a written Change Order and approved and accepted

Page 8 of 12

by the Association on such written Change Order. Any attempted reservation by Contractor of the right to subsequently claim any amount or extension of time not stated on the face of a written Change Order approved and accepted by Association shall be null and void. All Change Orders issued under this Contract shall be subject to all of the terms of this Contract.

15. **ASSIGNMENT:**

Contractor shall not let, assign or transfer this Contract or any part thereof, or any interest therein, without the written consent of Association.

16. **DISCLOSURES:**

Construction Industries Recovery Fund.

FLORIDA HOMEOWNERS' CONSTRUCTION RECOVERY FUND PAYMENT MAY BE AVAILABLE FROM THE FLORIDA HOMEOWNERS' CONSTRUCTION RECOVERY FUND IF YOU LOSE MONEY ON A PROJECT PERFORMED UNDER CONTRACT, WHERE THE LOSS RESULTS FROM SPECIFIED VIOLATIONS OF FLORIDA LAW BY A LICENSED CONTRACTOR. FOR INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONTACT THE FLORIDA CONSTRUCTION INDUSTRY LICENSING BOARD AT THE FOLLOWING ADDRESS AND PHONE NUMBER:

> Construction Industry Licensing Board
> 2601 Blair Stone Road
> Tallahassee, FL 32399
> Telephone: (850) 487-1395

Radon Disclosure.

Radon is a naturally occurring radioactive gas that, when it accumulates in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon testing may be obtained from your county public health unit.

Construction Lien Disclosure.

ACCORDING TO FLORIDA'S CONSTRUCTION LIEN LAW (SECTIONS 713.001-713.37, FLORIDA STATUTES), THOSE WHO WORK ON YOUR PROPERTY OR PROVIDE MATERIALS AND SERVICES AND ARE NOT PAID IN FULL HAVE A RIGHT TO ENFORCE THEIR CLAIM FOR PAYMENT AGAINST YOUR PROPERTY. THIS CLAIM IS KNOWN AS A CONSTRUCTION LIEN. IF YOUR CONTRACTOR OR A SUB-CONTRACTOR FAILS TO PAY SUB-CONTRACTORS, SUB-CONTRACTORS, OR MATERIAL SUPPLIERS, THOSE PEOPLE WHO ARE OWED MONEY MAY LOOK TO YOUR PROPERTY FOR

PAYMENT, EVEN IF YOU HAVE ALREADY PAID YOUR CONTRACTOR IN FULL. IF YOU FAIL TO PAY YOUR CONTRACTOR, YOUR CONTRACTOR MAY ALSO HAVE A LIEN ON YOUR PROPERTY. THIS MEANS IF A LIEN IS FILED YOUR PROPERTY COULD BE SOLD AGAINST YOUR WILL TO PAY FOR LABOR, MATERIALS, OR OTHER SERVICES THAT YOUR CONTRACTOR OR A SUB-CONTRACTOR MAY HAVE FAILED TO PAY. TO PROTECT YOURSELF, YOU SHOULD STIPULATE IN THIS CONTRACT THAT BEFORE ANY PAYMENT IS MADE, YOUR CONTRACTOR IS REQUIRED TO PROVIDE YOU WITH A WRITTEN RELEASE OF LIEN FROM ANY PERSON OR COMPANY THAT HAS PROVIDED TO YOU A "NOTICE TO OWNER". FLORIDA'S CONSTRUCTION LIEN LAW IS COMPLEX, AND IT IS RECOMMENDED THAT YOU CONSULT AN ATTORNEY.

17.  **CHAPTER 558 NOTICE OF CLAIM:**

Contractor and Association agree that this Contract shall be exempt from the provisions of Chapter 558 of the Florida Statutes, and further agree to opt out of the provisions and notice requirements contained in Chapter 558, Florida Statutes, pursuant to Section 558.005(1), Florida Statutes.

18.  **NOTICES:**

Notices to the parties as provided herein shall be by certified mail/return receipt requested to the following addresses:

**As to Association:**

Autumn Lake Recreation Association, Inc.
Attn: President
c/o Sandcastle Community Management
9150 Galleria Court, Suite 201
Naples, FL 34109

-and-

Pavese Law Firm
Attn: Christopher L. Pope, Esquire
1833 Hendry Street
Fort Myers, FL 33901

**As to Contractor:**

Katerra Construction, LLC
Attn: Steve Deleon
3200 Earhart Drive
Carrollton, TX 75006

19. <u>**ATTORNEY FEES AND VENUE**</u>:

In any adversarial proceeding, including breach, enforcement, or interpretation arising out of this Contract, the prevailing party in such litigation, shall be entitled to recover from the non-prevailing party reasonable attorney fees and costs, including such fees and costs regarding all aspects of the litigation, including any appeals. This Contract is made in the State of Florida and shall be governed by Florida law. The Courts of Lee County, Florida shall be the proper venue for any litigation involving this Contract.

[SIGNATURE PAGE FOLLOWS]

Association and Contractor hereby agree to the foregoing terms and conditions as of the date first set forth above. The individuals, by signing below, represent that they have the authority to bind the party on whose behalf they are signing.

**Witnesses (2):**

Sign: _Keith Hartmann_
Print: Keith Hartmann

Sign: _Kelly L. Huntley_
Print: Kelly L. Huntley

**AUTUMN LAKE RECREATION ASSOCIATION, INC.**
a Florida not-for-profit corporation

By: _____
     **Michael Bannigan, President**

Attest: _____
        **Donna Greco, Secretary**

**Witnesses (2):**

Sign: _Allison Jennings_
Print: Allison Jennings

Sign: _Darcy Thomas_
Print: Darcy Thomas

**KATERRA CONSTRUCTION, LLC**
a Delaware limited liability company
License # CGC1526785

By: _____
Print: Steve DeLeon
Title: Managing Director

**COMPOSITE EXHIBIT "1"**



**Tile Re-Roof Proposal**



**Autumn Lake**

23500 Sandycreek Terrace

Estero Beach, FL 34135

Scott Page | Senior Account Manager
6/3/19
spage@srgroofing.com

SRG Roofing 14350 Proton Road, Farmers Branch, TX 75244
O 469.208.3733   F 972.818.1069



# Table Of Contents

- Introduction Letter
- Google Overview
- Scope Of Work
- Investment Summary Page
- SRG Company Information

TABLE OF CONTENTS



June 3, 2019

Autumn Lake
23500 Sandycreek Terrace
Estero Beach, FL 34135

 Dear Management,

Thank you for letting SRG Roofing bid your upcoming roofing project. As a full service roofing contractor, we can help you address all of your roofing needs.

We specialize in commercial, industrial, public buildings, and multifamily roofing. With over 12 years of experience, we are sensitive to the needs of our clients and understand the importance of maintaining production, safety for employees, and safe guarding materials.

SRG Roofing was founded in 2006 for the purpose of providing commercial, industrial, and multifamily roofing services in the state of Texas. Today we have grown into a nationwide company through our dedicated team and personal relationships with our clients. We believe that by developing a trusted partnership with our clients, following innovative business practices, offering competitive pricing, and understanding project goals, we can help you complete your roofing project of any size. Whether it is a new property you just purchased, maintaining an existing property or renovating an older property, our team will work to provide you with the most cost effective, environmentally friendly and top of the line roofing system available. We look forward to building a relationship with you on your next roofing project.


Sincerely,


Scott Page
Senior Account Manager

## INTRODUCTION LETTER



# Autumn Lake
# 23500 Sandycreek Terarce
# Estero Beach, FL 34135



## GOOGLE OVERVIEW

## Exhibit 'A' "Scope of Work"

**SRG ROOFING**
**14350 Proton Rd.**
**Farmers Branch, TX  75244**
**Office: (469) 208-3733**



THIS CONTRACT IS
ENTERED INTO
THIS DATE: June 3, 2019

**The Agreement:**

SRG Roofing, LLC proposes to furnish all labor, material and necessary equipment to professionally execute all work described in the Scope of Work below.

**Pre-Construction Meeting:**

1. SRG Roofing, Inc. will conduct pre-construction meeting with the owner/buyer's representative. The meeting will cover safety procedures, working hours, code compliance, and the loading and unloading procedures.

**Pre-Construction Submittal:**

1. SRG roofing will complete the required submittals for the products specified. The list includes, but is not limited to Certificate of Insurance, Product Information Sheets, MSDS Sheets, and Emergency Contact List. The information will be provided to the owner/buyer's representative for approval.

**PROJECT SCOPE: Furnish Labor And Compatible Materials To Professionally Execute The Install Of A New Crown Tile Roof System Per Manufacturer's Specifications.**

**Surface Preparation:**

- Tear off the existing tile and battens down to the existing underlayment and <u>dispose of debris</u>.

- Inspect existing decking for deteriorated and/or damaged conditions. If the deck is found not capable of providing a suitable substrate for the installation of the new roof, the decking will be removed and replaced.

- Re-nail 100% of roof sheathing per Florida Building Code.

- Remove 100% of existing wall and step flashings and dispose of debris.

- Remove existing lead jacks and dispose of debris.

- Remove existing O'Hagen vents and dispose of debris.

## SPECIFICATIONS

## Exhibit 'A' "Scope of Work"

**Tile Installation:**

- Furnish and install a new layer of D-226 30# felt over existing underlayment.
  - Felt will be fastened with 1" cap nails.

- Furnish and Install new SA tile underlayment over 30# felt.

- Furnish and install new 2"x 2" metal drip edge at all eave and rake edges. New drip edge to be pre-painted to match existing color profile.

- Furnish and install new Birdstop at all eave locations.  New Birdstop to match existing drip edge color as close as possible.

- Furnish and install new wall and step flashing in all locations.
  - Channels to be cut into Stucco to allow new flashing to be installed.
    - Any stucco work / repair is not included in the price.

- Furnish and install Ice & Water Shield on center in all valley locations.
  - Furnish and install W Valley Metal over top of underlayment.
    - Valley metal to extend 11" each way from center of valley per IBC.

- Furnish and install new Crown (Tuscany Profile) Tile
  - Tile to be secured with nail pattern per building code.
  - Color to be SAND HILL in color, Sanibel in Profile, per choice of Autumn Lakes Association
  - Hurricane clips to be used  in all areas required by manufacture specifications.
  - 20% waste factor to be used to account for tile breakage.
  - Tile wind uplift ratings meet Miami Dade Building Code specifications. (see attached code approval)

- Furnish and install new Universal Ridge to all hip locations.
  - Hip tiles to be fastened at a 2 nail per tile ratio.

- Furnish and install new Ridge tile to all ridge locations.
  - Ridge tiles to be fastened at a 2 nail per tile ratio.

- Furnish, mix and pour new Unibond Mortar at all ridge locations to seal the ridge tile.

- All areas to be water tight at the end of each day and in the event of delays in Roof inspections.

- SRG to have 100% supervision throughout the duration of the project.

## SPECIFICATIONS

**Exhibit 'A' "Scope of Work"**

**Ventilation/ Penetrations:**

- Furnish and install new roll Ridge Vent in all existing ridge vent locations.

- Furnish and install new lead jack flashings to existing roof pipe penetrations.
    - Paint all lead jacks to match roof color.

- Furnish and install new O'Hagen Vents in existing locations.

**SPECIFICATIONS**



# ABOUT
# SRG ROOFING

Founded in 2006 for the purpose of providing multifamily, commercial and industrial roofing services. We have grown into a nationwide company through our dedicated team of roofing experts and personal relationships with our clients.

We believe that developing trusted partnership with our clients, providing cost effective, environmentally friendly and top of the line roofing systems, competitive pricing and quality workmanship is key to completing your roofing project. In addition, we back our work with extended warranties. Our expertise and industry reputation gives us the ability to provide 10, 15 and 20-year manufacturer NDL (no dollar limit) warranties to our clients.

- TPO/PVC
- Modified Bitumen
- BUR
- EPDM
- Maintenance Program
- Architectural Composition Shingles
- Tile (Concrete Clay)
- Restoration/ Top Coat
- Standing Seam
- Insurance Claims

Free Two-Year Maintenance Program can be included as a part of your roofing construction proposal. Maintenance includes: re-nailing flashings, re-sealing roof penetrations, cleaning gutters, sealing exposed nail heads, debris removal, ect.

## CERTIFIED INSTALLERS:

GAF - Master Roofing Contractor and Certified Maintenance Professionals
Certainteed - Master Shingle Applicator
Owens Corning - Certified Installer
Duro-Last - Dealer/Contractor
Firestone - Red Shield Building Envelope Applicator
Polyglass - Registered Contractor

## PARTNERSHIPS & SERVICES PROVIDED TO:

Associa
Bascom
Stream Realty
Banner Properties
Remington Hotels
Premier Hospitality
USPS
Greystar

Texas Women's University
CAF
BH Management
Marriott International
GAP
Hard Rock Cafe
Simson Property Group
Westwood Residential

## SAFETY TRAINING & COMPLIANCE

STC- Safety & Training Compliance LLC
Compliance Depot
Enterprise Risk Control
Isnetworld
Registery Monitoring Insurance Service



WWW.SRGROOFING.COM
1.855.860.3732
CALIFORNIA | COLORADO | FLORIDA | TEXAS (HQ)

f  /SRGROOFING
y  /SRGROOFING
in /COMPANY/SRG-ROOFING
✉  INFO@SRGROOFING.COM

 KATERRA

| | |
|---|---|
| Insured: | Autum Lake community |
| Property: | 23500 Sandycreek Terrace |
| | Estero Beach, FL 34135 |

| | | | |
|---|---|---|---|
| Estimator: | Tyler Wood | Cellular: | (469) 865-7502 |
| Position: | Estimator/Project Manager | E-mail: | tyler.wood@katerra.com |
| Company: | Katerra | | |
| Business: | 3200 Earhart Dr. | | |
| | Carrollton, TX 75006 | | |

**Claim Number:**          **Policy Number:**          **Type of Loss:** Hurricane

| | | | |
|---|---|---|---|
| Date of Loss: | 9/9/2017 | Date Received: | 7/9/2018 |
| Date Inspected: | | Date Entered: | 7/10/2018 11:36 AM |

| | |
|---|---|
| Price List: | FLFM8X_APR19 |
| | Restoration/Service/Remodel |
| Estimate: | AUTUMNLAKECOMMU-CO23 |

KATERRA

### AUTUMNLAKECOMMU-CO23

#### Drywall /screens

**Drywall /screens**

| DESCRIPTION | QTY |
| --- | --- |
| 1. Stucco / Ext. Plaster Repair - Min. Charge - Lab. and Mat. | 8.00 EA |

NOTES:

#### Building 23506

**Building 23506**

| DESCRIPTION | QTY |
| --- | --- |
| 2. R&R Window screen, 10 - 16 SF | 8.00 EA |
| 3. Window screen, 26 - 32 SF | 2.00 EA |

NOTES:

#### Unit 101

**Unit 101**

| DESCRIPTION | QTY |
| --- | --- |
| 4. Caulking - acrylic | 31.00 LF |

NOTES:

#### Master Bedroom

| DESCRIPTION | QTY |
| --- | --- |
| 5. Mask per square foot for drywall work | 733.15 SF |

KATERRA

### CONTINUED - Master Bedroom

| DESCRIPTION | QTY |
|---|---|
| 6.  Floor protection - plastic and tape - 10 mil | 210.00 SF |
| 7.  Contents - move out then reset | 1.00 EA |
| 8.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 9.  Final cleaning - construction - Residential | 210.00 SF |
| 10.  R&R Additional cost for high wall or ceiling - 11' to 14' high | 32.00 SF |

NOTES:

### Guest Bedroom

| DESCRIPTION | QTY |
|---|---|
| 11.  Mask per square foot for drywall work | 608.03 SF |
| 12.  Floor protection - plastic and tape - 10 mil | 140.00 SF |
| 13.  Contents - move out then reset | 1.00 EA |
| 14.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 15.  Final cleaning - construction - Residential | 140.00 SF |

NOTES:

### Unit 102

Unit 102

| DESCRIPTION | QTY |
|---|---|
| 16.  Caulking - acrylic | 7.00 LF |

KATERRA

CONTINUED - Unit 102

| DESCRIPTION | QTY |
|---|---|

NOTES:

### Cafe

| DESCRIPTION | QTY |
|---|---|
| 17.  Mask per square foot for drywall work | 306.75 SF |
| 18.  Floor protection - plastic and tape - 10 mil | 80.00 SF |
| 19.  Contents - move out then reset | 1.00 EA |
| 20.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 21.  Final cleaning - construction - Residential | 80.00 SF |

NOTES:

### Unit 103

| DESCRIPTION | QTY |
|---|---|
| 22.  Caulking - acrylic | 12.00 LF |

NOTES:

AUTUMNLAKECOMMU-CO23                                     6/12/2019          Page: 4



**Unit 105 Cake Kitchen**

| DESCRIPTION | QTY |
|---|---|
| 23.  Mask per square foot for drywall work | 566.17 SF |
| 24.  Floor protection - plastic and tape - 10 mil | 120.00 SF |
| 25.  Contents - move out then reset | 1.00 EA |
| 26.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 27.  Final cleaning - construction - Residential | 120.00 SF |

NOTES:

**Unit 107**

| DESCRIPTION | QTY |
|---|---|
| 28.  Mask per square foot for drywall work | 734.25 SF |
| 29.  Floor protection - plastic and tape - 10 mil | 210.00 SF |
| 30.  Contents - move out then reset | 1.00 EA |
| 31.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 32.  Final cleaning - construction - Residential | 210.00 SF |
| 33.  R&R Additional cost for high wall or ceiling - 11' to 14' high | 32.00 SF |

NOTES:

**Bldg 23516**

**Bldg 23516**

| DESCRIPTION | QTY |
|---|---|
| 34.  R&R Window screen, 10 - 16 SF | 2.00 EA |

KATERRA

CONTINUED - Bldg 23516

| DESCRIPTION | QTY |
|---|---|

NOTES:

---

Unit 202

**Unit 202**

| DESCRIPTION | QTY |
|---|---|
| 35.  Caulking - acrylic | 13.00 LF |

NOTES:

---

**Foyer/Entry**

| DESCRIPTION | QTY |
|---|---|
| 36.  Mask per square foot for drywall work | 520.75 SF |
| 37.  Floor protection - plastic and tape - 10 mil | 80.00 SF |
| 38.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 39.  Final cleaning - construction - Residential | 80.00 SF |
| 40.  R&R Additional cost for high wall or ceiling - 11' to 14' high | 32.00 SF |
| 41.  Contents - move out then reset | 1.00 EA |

NOTES:

---

AUTUMNLAKECOMMU-CO23                    6/12/2019         Page: 6

 KATERRA

### Cafe

| DESCRIPTION | QTY |
|---|---|
| 42.  Mask per square foot for drywall work | 312.25 SF |
| 43.  Floor protection - plastic and tape - 10 mil | 80.00 SF |
| 44.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 45.  Final cleaning - construction - Residential | 80.00 SF |
| 46.  Contents - move out then reset | 1.00 EA |

NOTES:

### Master Bedroom

| DESCRIPTION | QTY |
|---|---|
| 47.  Mask per square foot for drywall work | 734.25 SF |
| 48.  Floor protection - plastic and tape - 10 mil | 210.00 SF |
| 49.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 50.  Final cleaning - construction - Residential | 210.00 SF |
| 51.  R&R Additional cost for high wall or ceiling - 11' to 14' high | 32.00 SF |
| 52.  Contents - move out then reset | 1.00 EA |

NOTES:

### Unit 203

| DESCRIPTION | QTY |
|---|---|
| 53.  Caulking - acrylic | 9.00 LF |

AUTUMNLAKECOMMU-CO23                                    6/12/2019          Page: 7

KATERRA

CONTINUED – Unit 203

| DESCRIPTION | QTY |
|---|---|
| NOTES: | |

**Unit 204**

| DESCRIPTION | QTY |
|---|---|
| 54.  Caulking - acrylic | 7.00 LF |
| NOTES: | |

**Unit 205**

| DESCRIPTION | QTY |
|---|---|
| 55.  Caulking - acrylic | 4.00 LF |
| NOTES: | |

**Unit 206**

| DESCRIPTION | QTY |
|---|---|

∦K KATERRA

CONTINUED – Unit 206

| DESCRIPTION | QTY |
|---|---|
| 56.  Caulking - acrylic | 6.00 LF |

NOTES:

Unit 207

| DESCRIPTION | QTY |
|---|---|
| 57.  Caulking - acrylic | 9.00 LF |

NOTES:

Unit 208

| DESCRIPTION | QTY |
|---|---|
| 58.  Caulking - acrylic | 8.00 LF |

NOTES:

⫴⫴Ⓚ KATERRA

### Unit 209

| DESCRIPTION | QTY |
|---|---|
| 59.  Caulking - acrylic | 10.00 LF |

NOTES:

### Garage

| DESCRIPTION | QTY |
|---|---|
| 60.  Mask per square foot for drywall work | 1047.17 SF |
| 61.  Floor protection - plastic and tape - 10 mil | 220.00 SF |
| 62.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 63.  Final cleaning - construction - Residential | 220.00 SF |
| 64.  Contents - move out then reset | 1.00 EA |

NOTES:

### Unit 210

| DESCRIPTION | QTY |
|---|---|
| 65.  Caulking - acrylic | 3.00 LF |

NOTES:

**Bldg 23526**

AUTUMNLAKECOMMU-CO23                                      6/12/2019          Page: 10

‖⟨ KATERRA

**Bldg 23526**

| DESCRIPTION | QTY |
|---|---|
| 66.  R&R Window screen, 10 - 16 SF | 4.00 EA |

NOTES:

**Unit 306 Foyer**

| DESCRIPTION | QTY |
|---|---|
| 67.  Mask per square foot for drywall work | 520.75 SF |
| 68.  Floor protection - plastic and tape - 10 mil | 80.00 SF |
| 69.  Contents - move out then reset | 1.00 EA |
| 70.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 71.  Final cleaning - construction - Residential | 80.00 SF |
| 72.  R&R Additional cost for high wall or ceiling - 11' to 14' high | 32.00 SF |

NOTES:

**Unit 307 Den**

| DESCRIPTION | QTY |
|---|---|
| 73.  Mask per square foot for drywall work | 510.67 SF |
| 74.  Floor protection - plastic and tape - 10 mil | 190.00 SF |
| 75.  Contents - move out then reset | 1.00 EA |
| 76.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 77.  Final cleaning - construction - Residential | 190.00 SF |

||| KATERRA

**CONTINUED - Unit 307 Den**

| DESCRIPTION | QTY |
|---|---|

NOTES:

---

**Unit 309 Guest bedroom**

| DESCRIPTION | QTY |
|---|---|
| 78.  Mask per square foot for drywall work | 449.42 SF |
| 79.  Floor protection - plastic and tape - 10 mil | 132.00 SF |
| 80.  Contents - move out then reset | 1.00 EA |
| 81.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 82.  Final cleaning - construction - Residential | 132.00 SF |

NOTES:

---

**Bldg 23536**

**Bldg 23536**

| DESCRIPTION | QTY |
|---|---|
| 83.  R&R Window screen, 10 - 16 SF | 14.00 EA |

NOTES:

---

**Unit 408 Garage**

**Unit 408 Garage**

AUTUMNLAKECOMMU-CO23                                    6/12/2019        Page: 12

**⫶⫶KATERRA**

| DESCRIPTION | QTY |
|---|---|
| 84.  Mask per square foot for drywall work | 1044.83 SF |
| 85.  Floor protection - plastic and tape - 10 mil | 220.00 SF |
| 86.  Contents - move out then reset | 1.00 EA |
| 87.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 88.  Final cleaning - construction - Residential | 220.00 SF |

NOTES:

### Unit Dining/living  410

| DESCRIPTION | QTY |
|---|---|
| 89.  Mask per square foot for drywall work | 1026.00 SF |
| 90.  Floor protection - plastic and tape - 10 mil | 530.00 SF |
| 91.  Contents - move out then reset | 1.00 EA |
| 92.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 93.  Final cleaning - construction - Residential | 530.00 SF |
| 94.  R&R Additional cost for high wall or ceiling - 11' to 14' high | 32.00 SF |

NOTES:

### Bldg 23456

**Bldg 23456**

| DESCRIPTION | QTY |
|---|---|
| 95.  R&R Window screen, 10 - 16 SF | 20.00 EA |

NOTES:

AUTUMNLAKECOMMU-CO23                                6/12/2019        Page: 13

 KATERRA

**Unit 501 den**

**Unit 501 den**

| DESCRIPTION | QTY |
|---|---|
| 96.  Mask per square foot for drywall work | 510.67 SF |
| 97.  Floor protection - plastic and tape - 10 mil | 190.00 SF |
| 98.  Contents - move out then reset | 1.00 EA |
| 99.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 100.  Final cleaning - construction - Residential | 190.00 SF |

NOTES:

**Guest bedroom**

| DESCRIPTION | QTY |
|---|---|
| 101.  Mask per square foot for drywall work | 443.75 SF |
| 102.  Floor protection - plastic and tape - 10 mil | 154.00 SF |
| 103.  Contents - move out then reset | 1.00 EA |
| 104.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 105.  Final cleaning - construction - Residential | 154.00 SF |

NOTES:

**Unit 502**

**Unit 502**

| DESCRIPTION | QTY |
|---|---|
| 106.  Caulking - acrylic | 30.00 LF |
| 107.  R&R Window screen, 10 - 16 SF | 1.00 EA |

AUTUMNLAKECOMMU-CO23                                              6/12/2019        Page: 14

ᴵᴷ KATERRA

**CONTINUED - Unit 502**

| DESCRIPTION | QTY |
|---|---|

NOTES:

---

**Foyer**

| DESCRIPTION | QTY |
|---|---|
| 108.  Mask per square foot for drywall work | 518.33 SF |
| 109.  Floor protection - plastic and tape - 10 mil | 80.00 SF |
| 110.  Contents - move out then reset | 1.00 EA |
| 111.  Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA |
| 112.  Final cleaning - construction - Residential | 80.00 SF |
| 113.  R&R Additional cost for high wall or ceiling - 11' to 14' high | 32.00 SF |

NOTES:

---

**Unit 503**

Unit 503

| DESCRIPTION | QTY |
|---|---|
| 114.  Caulking - acrylic | 15.00 LF |
| 115.  R&R Window screen, 10 - 16 SF | 1.00 EA |

NOTES:

---

AUTUMNLAKECOMMU-CO23                                     6/12/2019          Page: 15